UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN BRUCE HEFTER, et al., } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 2:16-cv-01805-RDP |
| } | |
| CHARLIE, INC., et al., } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on the Renewed Motion to Stay Action and Compel Plaintiffs to Submit Their Claims to Binding Arbitration (Doc. # 56), filed by Defendant Charlie, Inc., d/b/a Serra Hyundai ("Defendant Serra Hyundai" or "Serra Hyundai") on June 6, 2017, and the Motion to Stay Action and Compel Plaintiffs to Submit Their Claims to Binding Arbitration (Doc. # 58), filed by Defendant Christopher Cone ("Defendant Cone" or "Cone") on June 14, 2017. The Motions have been fully briefed. (*See* Docs. # 56; 58; 60; 62). For the reasons stated below, the court concludes that Defendant Serra Hyundai's Motion (Doc. # 56) and Defendant Cone's Motion (Doc. # 58) are due to be granted.

**I.      Procedural Background and Relevant Facts**

On September 24, 2016, Brittany Cherie White ("White") and Steven Bruce Hefter ("Hefter") (collectively, "Plaintiffs") left Serra Hyundai with a new car. (*See* Docs. # 52 at ¶ 45; 56 at 1; 60 at 2). Plaintiffs purchased the car using an installment plan. (Docs. # 52 at ¶¶ 14-15, 21; 60-11). Cone, an employee of Serra Hyundai, served as the Finance Manager for Plaintiffs' purchase. (Docs. # 52 at ¶ 28; 56-1 at 1-2). Before departing with the new car, Plaintiffs signed several documents. (*See* Docs. # 52 at ¶¶ 8, 17; 60 at 2-3).

The documents most relevant to the pending Motions (Docs. # 56; 58) are the Retail Buyers Order (Docs. # 60-10; 56-1 at 4-5), the Retail Installment Sale Contract (Doc. # 60-11), and the Delivery Receipt (Doc. # 60-6). The Retail Buyers Order contains the following agreement to arbitrate disputes:

> The Undersigned Purchaser and Seller, voluntarily **WAIVE ANY RIGHT TO A JURY TRIAL**, and further agree as follows:
>
> (1) That the motor vehicle described in this sale document has been heretofore traveling in interstate commerce and has had an impact on interstate commerce.
>
> (2) That in the event of any dispute(s), between the parties hereto or in the event of any dispute(s) arising out of or related to this contract, (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Seller, Inc. in connection with the sale of the motor vehicle, or otherwise dealing with a motor vehicle; any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreement(s), that Seller, and the purchaser agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. 1, et seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.
>
> (3) That in the event any dispute arises between purchaser and seller, its officers, agents and employees, the said dispute will be submitted to binding arbitration pursuant to 9 U.S.C. et seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.
>
> (4) (A) That in the event any dispute arises between the parties, as to the conformity or condition of the motor vehicle, the parties will permit a third party (to be mutually agreed upon), to inspect the motor vehicle to determine its conformity and condition, and that the findings of such third-party shall be binding upon Seller, and the purchaser, in connection with any litigation, arbitration or request for adjustment, pursuant to the provisions of the 1975 code of Alabama.
>
> (B) In the event Seller and the purchaser cannot agree upon a third-party to conduct such inspection, either party shall have the right to petition any court of competent jurisdiction, or

> panel of arbitrations, to appoint an expert to act as such third party.
>
> (C) The cost of such third-party inspection shall be borne equally by Seller and the purchaser or as may be directed by any court or panel of arbitrators.
>
> (5) This Arbitration agreement constitutes part of your retail buyers order.

(Docs. # 56 at 2; # 56-1 at 4; 60-10 at 2-3). The Retail Buyers Order also provides as follows:

> This order shall not become binding upon either the Purchaser or the Seller until the vehicle described above is physically delivered and Purchaser has received the Disclosures required under Federal Law, if applicable, in the case of a credit sale, the Seller shall not be obligated to sell until a finance source approves this Order and agrees to purchase a retail installment contract between the Purchaser and the Seller based on this Order.

(Docs. # 56-1 at 4; 60-10 at 3).

The back of the Retail Buyers Order explains that the buyer has "been given the opportunity to purchase" the listed car and that, by "accepting this offer," the buyer agrees to the terms listed in the Retail Buyers Order. (*See* Docs. # 56-1 at 5; 60-10 at 4). Additionally, the Retail Buyers Order once again states the aforementioned Arbitration Agreement, lays out the Bailment Agreement, and requires the purchasers' signatures. (*Id.*). The Bailment Agreement explains the implications of purchasing a vehicle on an installment payment plan:

> If the vehicle described on the front of this buyers order was purchased on an installment payment plan, this vehicle is being delivered PENDING FINANCIAL APPROVAL, by lender or lenders as a convenience to the buyer or buyers, and is subject to all terms and agreements of the said contract. The Seller has all the rights to the said vehicle until the loan term and conditions have been approved by the lender or lenders. Upon loan denial or condition approval to which the purchaser cannot conform to the condition, Purchaser(s) shall promptly (within 24 hours of loan denial) return said vehicle to the Seller in the original condition. Purchaser(s) shall be liable for any damage, destruction, or abuse to the said vehicle until inspected by the Seller. Therefore, <u>I UNDERSTAND THAT THIS VEHICLE IS BEING DELIVERED SUBJECT TO FINANCIAL APPROVAL.</u>

3

(*Id.*). Plaintiffs signed both sides of the Retail Buyers Order. (Doc. # 56-1 at 4-5).

The Retail Installment Sale Contract notes that the buyer has the option to buy the vehicle using cash or by paying on credit. (Doc. # 60-11). It specifies that, by signing the Retail Installment Sale Contract, the buyer chooses to purchase the vehicle on credit and agrees to the seller's terms for doing so. (*Id.*). In a bold font, the Retail Installment Sale Contract states,

> Any dispute resolution agreement you sign with us or an assignee of this contract will apply to claims related to this contract. . . . You agree to the terms of this contract and any dispute resolution agreement you signed with this contract. You confirm that before you signed this contract and any dispute resolution agreement, we gave them to you, and you were free to take them and review them.

(*Id.*). Plaintiffs both signed this document. (*Id.*).

Plaintiffs also signed a Delivery Receipt, which notes,

> If a retail instal[l]ment contract is executed as part of this sales transaction, then buyer and seller intend that this contract will be assigned by seller. In the event seller is unable to assign this contract within ___ days of the date hereof, *this contract shall be null and void* and buyer, immediately upon notice by seller, shall do one of the following:
>
> 1. Purchase the vehicle from seller for the cash price thereof set forth herein; or
>
> 2. Return the vehicle described herein to seller and pay to seller the cost of repair or any damage occurring to the vehicle while in buyers possession.

(Doc. # 60-6) (capitalization excluded; emphasis added). It is unclear if Defendants ever filled in the blank in this contract or signed it. (*See id*). The Delivery Receipt also states that it is "attached to and made a part of the buyers order - invoice, bill of sale or retail instal[l]ment contract dated this date . . . ." (*Id.*) (capitalization excluded).

In October 2016, Defendant Serra Hyundai began demanding that Plaintiff White return the car to the dealership because financing had not been secured for her purchase. (Doc. # 52 at

4

¶¶ 73-77). Plaintiffs initiated this action against Defendant Serra Hyundai on November 7, 2016. (Docs. # 1; 56 at ¶ 3). Plaintiffs later amended their complaint to include Cone as a Defendant in this case. (*See* Docs. # 50; 52). The Second Amended Complaint seeks a declaratory judgment that Plaintiffs entered into a binding contract with Defendant Serra Hyundai, entitling Plaintiffs to retain possession of the car. (Doc. # 52). It also asserts the following claims against Defendants: violation of the Truth in Lending Act and Regulation Z, breach of duty to forward title application, misrepresentation, suppression, breach of contract, unjust enrichment, and violation of the Equal Credit Opportunity Act. (*Id.*).

On January 10, 2017, Plaintiff White filed a petition for bankruptcy relief (Docs. # 38; 56 at ¶ 5). This case was stayed pending the outcome of Plaintiff White's bankruptcy proceedings. (Doc. # 39). On May 18, 2017, the bankruptcy court (1) ruled that Plaintiff White had "a sufficient ownership interest in the Hyundai that it became property of the estate . . . protected by the automatic stay" and (2) confirmed Plaintiff White's Chapter 13 plan. *See In re White*, No. 17-00102-TOM-13 (Bankr. N.D. Ala. May 18, 2017). Shortly thereafter, Serra Hyundai renewed its motion seeking to compel arbitration. (Doc. # 56).

**II.    Discussion**

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (quoting 9 U.S.C. § 2). "This provision 'reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.'" *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ."). Furthermore, the FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The FAA requires enforcement of an arbitration provision when a valid agreement to arbitrate exists, the agreement involves or affects interstate commerce, and the claim falls within the scope of the agreement to arbitrate. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). Without question, the first two requirements are met here. First, the parties do not dispute that the underlying contract at issue involves interstate commerce. (*See* Doc. # 56 at ¶¶ 9-11; *see generally* Doc. # 60). Second, Plaintiffs' claims clearly fall within the broad scope of the Arbitration Agreement, which covers disputes (i) arising "out of or related to this contract, []including but not limited to the terms of the agreement [and] . . . any terms of financing in connection therewith," and (ii) "between purchaser and seller, its officers, agents and employees." (Docs. # 56 at 2; # 56-1 at 4; 60-10 at 2-3); *see also Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) (noting that ambiguities regarding the scope of an arbitration provision are to be resolved in favor of arbitration).

The parties' disagreement centers around the court's authority to decide the validity of the contract as a whole and whether the contract at issue is "binding." (*See* Docs. # 56, 58, 60, 62). Specifically, Plaintiffs argue that (1) a court should determine the "existence" of a contract

that contains an arbitration provision; (2) a transaction that includes an arbitration provision and an unfulfilled condition precedent of third-party financing is not a "contract" under Alabama law; and (3) third-party financing was a condition precedent to Plaintiffs' transaction with Serra Hyundai and this condition precedent precluded a "contract" from forming.[1] (Doc. # 60). The court addresses each of these arguments, in turn.

### A. The Validity of the Arbitration Agreement, Not the Contract as a Whole, Is at Issue

"There are two types of validity challenges under § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 (2006). The former challenge "is relevant to a court's determination whether the arbitration agreement at issue is enforceable;" however, the latter type of challenge "does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the 'making' of the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) ("Challenges to the validity of the contract as

---

[1] Plaintiffs also argue that they have not taken inconsistent positions regarding their claims against Defendants and their contention that the Retail Buyers Order never became a contract. (*See* Doc. # 60 at 17-21). The court does not address the "consistency" of Plaintiffs' arguments because this issue is not relevant to the validity of the Arbitration Agreement. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (quoting 9 U.S.C. § 2); *Concepcion*, 563 U.S. at 355 (Thomas, J., concurring) (explaining that, under the FAA, a party can call into question the validity of an arbitration agreement by "assert[ing] a defense concerning the formation of the agreement to arbitrate, such as fraud, duress, or mutual mistake").

a whole are for the arbitrator to decide, whereas challenges to the validity of the arbitration clause in particular or to the very existence of the contract must be resolved by the court before deciding a motion to compel arbitration.").

Section 2 of the FAA requires "that courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself." *Granite Rock*, 561 U.S. at 301; *see Buckeye*, 546 U.S. at 445-46 ("First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). A party may challenge the enforceability of an agreement to arbitrate based on the formation of that agreement. *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 993 (11th Cir. 2012). Accordingly, here, the court is called upon to consider the validity and enforceability of the Arbitration Agreement, rather than the validity and enforceability of the contract as a whole.[2]

### B. The Third-Party Financing Conditional Language Did Not Prevent a Valid Arbitration Agreement from Forming

"Whether an arbitration agreement exists is settled by state-law principles of contract law." *Hanover Ins. Co. v. Atlantis Drywall & Framing LLC*, 611 F. App'x 585, 588 (11th Cir. 2015). Under Alabama law, "[t]he elements of a valid contract include: an offer and an

---

[2] Plaintiffs rely on *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th 2016), in arguing that this court should determine whether a contract as a whole exists between Plaintiffs and Defendant Serra Hyundai. Plaintiffs' reliance on *Bazemore* misses the mark. In *Bazemore*, the Eleventh Circuit held that, absent evidence of the existence of an arbitration agreement, a court could not compel arbitration. *See* 827 F.3d 1325. The court of appeals did not conclude that a court should first determine whether a contract in its entirety exists before ruling on a motion to compel arbitration. *See generally id*. More specifically, in *Bazemore*, a credit card company failed to meet its burden of proving that an arbitration agreement existed because it presented no evidence of personal knowledge, documents, or exchanges illustrating that the plaintiff in that case ever viewed or received an agreement to arbitrate. *See* 827 F.3d at 1327-28. Here, to the contrary, it is clear that Plaintiffs received and signed a document -- the Retail Buyers Order -- that contained an agreement to arbitrate. (Docs. # 56-1 at 4-5; 60-10 at 2).

acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009) (citations and internal quotations omitted). Here, Defendants have certified that Plaintiffs signed an arbitration agreement as part of a transaction affecting interstate commerce and they have provided a copy of the signed Arbitration Agreement (Doc. # 56-1); therefore, they have met their initial burden of supporting the existence of an agreement to arbitrate. *See Hanover*, 611 F. App'x at 588-89. As such, the burden is on Plaintiffs, as the party opposing arbitration, to proffer evidence demonstrating that the agreement to arbitrate is invalid or does not apply to the dispute in question. *See id*.

Plaintiffs contend that a binding contract never formed between Plaintiffs and Defendant Serra Hyundai because, when an agreement to purchase a car "stipulates that it is 'subject to financial approval,' financial approval is a 'condition precedent' to the existence of a contract." (Doc. # 60 at 13). As an initial matter, Plaintiffs' argument questions Defendants' ability to enforce the contract as a whole, not the Arbitration Agreement within the contract. Because arbitration provisions "are enforceable apart from the remainder of a contract," the validity of the contract as a whole should be left for the arbitrator to decide. *Buckeye*, 546 U.S. at 445-46; *see also Paragon Ltd., Inc. v. Boles*, 987 So.2d 561, 568 (Ala. 2007) (holding that an arbitration clause in a contract was enforceable and that whether the movant's actions rendered the underlying contract as a whole void was irrelevant). Furthermore, it is generally the arbitrator, not the court, who should determine whether a condition precedent to arbitration has been met. *African Methodist Episcopal Church, Inc. v. Smith*, 217 So.3d 816, 829 (Ala. 2016) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) and *Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C.*, 35 So.3d 601, 606 (Ala. 2009)).

Moreover, regardless of whether Plaintiffs' allegation attacks the contract as a whole (as opposed to the validity of the Arbitration Agreement itself), Plaintiffs argument remains misplaced. Plaintiffs rely on *Ex parte Payne*,[3] where the Alabama Supreme Court vacated an order compelling a buyer to arbitrate with a car dealership (Jay Pontiac) and explained that the buyer's offer was never accepted because the "requirement that a credit sale be approved in writing by a bank or finance company [was] a condition precedent to the creation of a binding contract." 741 So.2d 398, 403 (Ala. 1999). Two facts differentiate *Payne* from this case: (1) Jay Pontiac -- the party requesting arbitration in *Payne* -- specifically denied that a contract was ever formed between itself and the buyer; and (2) the retail purchase order, which included the agreement to arbitrate, stated that "'the Purchaser(s) [*sic*] offer is not accepted and the transaction is not consummated until . . . approved in writing by Dealer and a responsible Bank or Finance Company . . . .'" *Id.* at 400, 404 (emphasis excluded). Accordingly, in *Payne*, a valid contract under Alabama law was never formed because the car dealership never *accepted* the buyer's offer. *See Shaffer*, 29 So.3d at 880.

Conversely, in this case, Defendant Serra Hyundai does not dispute that a contract formed. And, it is equally clear that the Retail Buyers Order, which contains the Arbitration Agreement, does not create a condition precedent to the *existence* of a binding contract. Rather, the Retail Buyers Order stipulates that the order becomes binding when (1) the vehicle "is

---

[3] Plaintiffs also cite *Ex parte Cobb*, 781 So.2d 208 (Ala. 2000) (finding that, based on *Payne*, a contract to lease a car was void because the car was being delivered subject to financial approval, the car dealership did not view the Lease Agreement as a binding contract, and the Lease Agreement had "void" and "turned down" written across it). The Alabama Supreme Court later explained that its holding in *Cobb* centered on the car dealership's inconsistent positions in asking the Court to enforce an agreement to arbitrate, while also contending that the underlying contract was void. *See Ex parte Bill Heard Chevrolet, Inc.*, 927 So.2d 792, 801 (Ala. 2005). *Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas*, discussed *supra*, further contradicts *Cobb* in that it enforces an agreement to arbitrate despite similar conditional language. *See Dan Wachtel Ford*, 891 So.2d 287, 290-92 (Ala. 2004).

This court also notes that the Alabama Supreme Court issued its decisions in *Payne*, 741 So.2d 398, and *Cobb*, 781 So.2d 208, before the United States Supreme Court decided *Buckeye*, 546 U.S. 440, and that the Alabama Supreme Court has since recognized that "challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court." *Paragon*, 987 So.2d at 567.

physically delivered" and (2) "Purchaser has received the Disclosures required under Federal Law." (Docs. # 56-1 at 5; 60-10 at 4). The parties do not question that either of these conditions were fulfilled. The Bailment Agreement, which is also included in the Retail Buyers Order, further indicates that the financing terms do not alter the contractual provisions of the Retail Buyers Order: "this vehicle is being delivered PENDING FINANCIAL APPROVAL, by lender or lenders as a convenience to the buyer or buyers, and *is subject to all terms and agreements of the said contract*." (Docs. # 56-1 at 5; 60-10 at 4) (italicized emphasis added).

In *Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas*, a plaintiff-buyer opposed a car dealership's motion to compel arbitration, claiming that the underlying contract for the purchase of the vehicle was void because the dealership never obtained financing for her purchase. *See* 891 So.2d 287, 289 (Ala. 2004). Similar to the situation here, the plaintiff-buyer signed a retail buyer's order, retail installment contract, and delivery receipt; however, in *Dan Wachtel Ford*, the plaintiff-buyer also signed a standalone arbitration agreement. *Id.* at 290-91. Despite language in the delivery receipt, stating that the contract "shall be null and void" if the car dealership was unable to assign the contract within 3 days, the Alabama Supreme Court held that, when the car dealership was unable to obtain financing for the plaintiff's purchase, the retail installment contract was the only document that became void. *Id.* at 291. The retail buyer's order, delivery receipt, and arbitration agreement remained effective. *Id.* The relevant provisions in the retail buyer's order and the delivery receipt in *Dan Wachtel Ford* are substantially comparable to those in the Retail Buyers Order (Docs. # 56-1; 60-10) and the Delivery Receipt (Doc. # 60-6) that Plaintiffs White and Hefter signed.[4]

---

[4] More specifically, the retail buyer's agreement in *Dan Wachtel Ford* provided, "'This order shall not become binding until accepted by dealer or its authorized representative and in the event of a time sale dealer shall not be obligated to sell until approval of the terms hereof is given by a bank or finance company willing to purchase a retail installment contract between the parties . . . .'" 891 So.2d at 290. This language is substantially similar to the

11

Under Alabama law, the financing condition in *Dan Wachtel Ford* does not affect the validity or prevent the formation of the retail buyer's order. *See id.* at 291-92. Therefore, similar conditional language at issue in this case does not prevent the Arbitration Agreement contained within the Retail Buyers Order from forming a binding agreement to arbitrate between Plaintiffs and Defendants. Because Plaintiffs have not refuted the validity of the Arbitration Agreement, the court "must rigorously enforce [the] arbitration agreement[] according to [its] terms" and compel Plaintiffs to submit their claims to arbitration. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). The validity of the entirety of the contract between Plaintiffs and Defendants is left to the arbitrator. *See Buckeye*, 546 U.S. at 445-46.

## III. Conclusion

For the foregoing reasons, Defendant Serra Hyundai's Motion (Doc. # 56) and Defendant Cone's Motion (Doc. # 58) are due to be granted. As such, this case is due to be dismissed without prejudice and Plaintiffs are compelled to submit their claims to arbitration. An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 19, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

language found in Defendant Serra Hyundai's Retail Buyers Order that Plaintiffs signed. (*See* Docs. # 56-1; 60-10). Indeed, the main provision in the delivery receipt in *Dan Wachtel Ford* is, in effect, identical to the one Plaintiffs White and Hefter signed. *Compare Dan Wachtel Ford*, 891 So.2d at 291 *with* (Doc. # 60-6).